UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CHEN LUNXI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-1027 (AJT/TCB) |
| | ) |
| JOHN DOE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned on Plaintiff Chen Lunxi's ("Plaintiff") Motion for Entry of Default Judgment against Defendant John Doe ("Doe") and eight internet domain names 191.com, 223.com, 282.com, 030.com, 8256.com, 8028.com, 6910.com, and 4589.com[1] ("Defendant Domain Names") (collectively, "Defendants") (Dkt. 10).[2] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiff's motion.

I. BACKGROUND

**A.    Procedural Posture**

Plaintiff filed a verified complaint on August 8, 2019 against Defendant John Doe, 72.com, 191.com, 223.com, 282.com, 030.com, 8256.com, 8028.com, 6910.com, and 4589.com.

---

[1] Plaintiff also moved for default judgment against 72.com. (*See* Dkt. 10.) As discussed below, the Court subsequently set aside the clerk's entry of default for this domain name.

[2] The relevant filings before the undersigned include Plaintiff's Verified Complaint (Dkt. 1) ("Compl."); Plaintiff's Motion for Entry of Default Judgment (Dkt. 10) ("Mot. Default J."); Memorandum of Law in Support of Plaintiff's Motion for Entry of Default Judgment ("Mem. Supp.") (Dkt. 11); and all attachments and exhibits submitted with those filings.

(*See* Compl. at 1.) Plaintiff brought claims for (1) declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201; (2) tortious interference with contractual relationship; (3) conversion; and (4) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. (Compl. ¶¶ V(40)-(57).) Plaintiff filed the lawsuit seeking "injunctive and other equitable relief" from the actions of an unknown individual who allegedly gained unauthorized access to Plaintiff's email accounts on a protected computer, used that access to transfer control of Defendant Domain Names away from Plaintiff, and thereby caused Plaintiff irreparable injury. (Compl. ¶ I(2).)

As discussed in more detail below, on September 27, 2019, Plaintiff filed a Motion for Leave to Serve by Email and Publication, requesting that the Court enter an order directing Plaintiff "to [p]ublish notice of this action in *The Washington Times* within fourteen days of entry of [the] Order and serve . . . all Defendants by email and publication." (Dkt. 2.) The Court granted Plaintiff's motion on September 30, 2019. (Dkt. 5.)

After Defendants failed to timely file an answer or respond to the lawsuit, Plaintiff requested the clerk's entry of default as to all Defendants (Dkt. 7), and the Clerk entered default on November 20, 2019 (Dkt. 8). Plaintiff subsequently filed the instant motion for default judgment and accompanying memorandum in support. (Dkts. 10-11.) When representatives for Defendants failed to appear or otherwise respond at the December 10 hearing, the undersigned took this matter under advisement to issue this Report and Recommendation. (*See* Dkt. 13.)

After the hearing, an individual contacted the Court, claiming to own 72.com. The party informed the Court that he was going to hire counsel, appear in the lawsuit, and move to set aside the clerk's entry of default as to 72.com. Thereafter, counsel entered an appearance for "72.com, *a res*, and the John Doe that is the rightful owner and in the possession, custody, and control of

2

72.com." (Dkt. 14.) Defendants 72.com, *a res*, and the John Doe[3] in "possession, custody, and control of 72.com" then filed an Unopposed Motion to Set Aside Entry of Default and Extend Time to File" (Dkt. 15). Plaintiff did not oppose the motion. (*See id.*) Finding good cause, the Court granted the motion on March 10, 2020, thereby setting aside the clerk's entry of default as to 72.com.[4] (*Id.*)

### B. Jurisdiction and Venue

Before the Court can render default judgment in this matter, it must have (1) subject-matter jurisdiction, (2) *in personam* or *in rem* jurisdiction, and (3) proper venue.

#### 1. *Subject-Matter Jurisdiction*

First, this Court has subject-matter jurisdiction. Federal district courts have original jurisdiction over all "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff brought claims pursuant to the Declaratory Judgment Act (Count I) and the CFAA (Count IV), which are both federal statutes. This Court therefore has federal question subject-matter jurisdiction over Counts I and IV pursuant to 28 U.S.C. § 1331.

Furthermore, federal courts may exercise supplemental jurisdiction over claims that are so closely related to the claim giving rise to the court's original jurisdiction "that they form part of the same case or controversy," subject to exceptions that are inapplicable here. 28 U.S.C. § 1367(a). Plaintiff brought state-law claims for tortious interference with contractual relationship (Count II) and conversion (Count III). The undersigned finds that these state-law claims arise

---

[3] This John Doe is allegedly a resident of Spain and claims that he has never "conduct[ed] business in" or "visited" the United States. (Dkt. 15 at 1 n.1.) He expressly states in the motion that he "does not hereby waive, but rather, expressly reserves the right to challenge personal jurisdiction pursuant to [Federal Rule of Civil Procedure] 12(b)(2) insofar [as] he is named as [a] party to any amended complaint." (*Id.*)

[4] Accordingly, this Report and Recommendation will only address the remaining Defendants (Doe, 191.com, 223.com, 282.com, 030.com, 8256.com, 8028.com, 6910.com, and 4589.com).

3

from the same set of facts giving rise to Plaintiff's claims under the Declaratory Judgment Act and the CFAA and are therefore part of the same case or controversy. As a result, this Court may properly exercise supplemental jurisdiction over Counts II and III. This Court accordingly has subject-matter jurisdiction over all of Plaintiff's claims.

2. In Personam *and* In Rem *Jurisdiction*

Second, the Court must be satisfied that it has *in personam* or *in rem* jurisdiction over Doe and Defendant Domain Names.

i. *In Personam* Jurisdiction Over Doe

For a federal court to have personal jurisdiction over a party, both the standards of due process under the Fourteenth Amendment and the forum state's long-arm statute must be satisfied. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction over an out-of-state defendant if the party has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Virginia's long-arm statute, Virginia Code section 8.01-328.1, provides for personal jurisdiction to the extent that federal due process allows. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002) (internal citation omitted) ("Virginia has a long-arm statute that extends the jurisdiction of its courts as far as federal due process permits."). With federal due process and Virginia's long-arm statute essentially requiring the same standard, the Court need only undertake one inquiry. *See id.* Further, for out-of-state defendants, the Court must have specific personal jurisdiction, which arises when the party's contacts with the state give rise to the basis

4

for the lawsuit. *Tire Eng'g & Distribution*, 682 F.3d at 301 (internal citation omitted).

Here, Virginia's long-arm statute provides for specific personal jurisdiction over Doe. The statute allows for personal jurisdiction over a defendant who has caused "tortious injury by an act or omission" in Virginia. Va. Code Ann. § 8.01-328.1(A)(3) (2019). Here, Plaintiff alleges that Doe "directed the acts complained of towards [this judicial] district and utilized instrumentalities which reached into the district." (Compl. ¶ III(24).) Specifically, Plaintiff alleges that Doe gained access to Plaintiff's email accounts, domain-management accounts, and associated computer records to cause the relevant "domain name registration records maintained by Verisign, Inc. . . . to be altered so as to transfer control of the Defendant Domain Names away from the Plaintiff." (Compl. ¶ III(24).) Verisign, Inc., which is the domain-name registry for Defendant Domain Names, is located in this judicial district. (Compl. ¶ II(7).) Therefore, because Doe caused a tortious injury by an act in Virginia, the Court may properly exercise specific personal jurisdiction over him.

### ii. *In Rem* Jurisdiction Over Defendant Domain Names

For a court to have *in rem* jurisdiction over property, it must have a sufficient basis to exercise jurisdiction under the Due Process Clause. *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 224 (4th Cir. 2002) (applying the "minimum contacts test" to a district court's exercise of *in rem* jurisdiction over internet domain names). Therefore, for this Court to exercise *in rem* jurisdiction over Defendant Domain Names here, they must "have sufficient contacts with the Commonwealth of Virginia to justify the exercise of *in rem* jurisdiction." *Harrods*, 302 F.3d at 224. In *Harrods*, the Fourth Circuit held that this Court had *in rem* jurisdiction over internet domain names because they were registered in Virginia. *See id.* ("[W]e conclude that courts in Virginia, the state where the

Domain Names are registered, may constitutionally exercise *in rem* jurisdiction over them. Thus, the district court's exercise of *in rem* jurisdiction over the Domain Names was constitutional.").

Here, Verisign, Inc. is the registry operator for all ".com" domain names and it is located in Reston, Virginia. (*See* Compl. ¶ II(7).) Because Defendant Domain Names are all ".com" domain names, and are therefore registered within this judicial district, the undersigned finds that Defendant Domain Names have sufficient contacts with Virginia for this Court to exercise *in rem* jurisdiction over them.

3. *Venue*

Lastly, Plaintiff filed this lawsuit in the proper venue pursuant to 28 U.S.C. § 1391(b). A plaintiff may file a civil action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). Here, venue is appropriate for similar reasons as to why this Court may exercise *in personam* and *in rem* jurisdiction over Defendants. Plaintiff alleges that Doe "caused the domain name registration records maintained by Verisign, Inc. . . . to be altered so as to transfer control of the Defendant Domain Names away from the Plaintiff." (Compl. ¶ III(24).) As Verisign, Inc. is located in this judicial district, the undersigned finds that "a substantial part of the events" giving rise to this lawsuit occurred in the Eastern District of Virginia, and venue is proper here.

**C.     Service of Process**

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served.

1. *Background*

Federal Rule of Civil Procedure 4(f) governs serving an individual in a foreign country. *See* Fed. R. Civ. P. 4(f). Of relevance here, the Rule allows a plaintiff to serve an individual in a foreign country by "means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).[5]

As mentioned above, Plaintiff filed a "Motion for Leave to Serve by Email and Publication." (Dkt. 2.) In support of the motion, Plaintiff explained that "[t]he aliases used by John Doe suggest that he is in China, although there is no way to know for sure," and further noted that Doe "concealed his true identity and location to evade responsibility for his actions." (Dkt. 3 at 2.) Plaintiff argued that "providing notice via email, along with the locking of the domain names by the registrar, . . . and publication, is reasonably calculated under all the circumstances to apprise John Doe of the pendency of the action." (*Id.*) Plaintiff further argued that because there was no way to determine Doe's location, service by email and publication constituted the only method to effect actual service of process. (*Id.*) Therefore, Plaintiff requested that the Court grant him leave "to serve process in this matter by email and a single publication in *The Washington Times*." (Dkt. 3 at 5.)

The Court granted Plaintiff's motion on September 30, 2019, finding that service by email and a single publication in *The Washington Times* was reasonably calculated to give Doe notice of this matter, especially because Doe's location was (and still is) unknown. (*See* Dkt. 5.) Specifically, the Court ordered Plaintiff to (1) publish a copy of the order in *The Washington*

---

[5] The Rules explicitly contemplates methods of service that have been internationally agreed upon (such as the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents). However, as Plaintiff and the Court are unaware of Doe's actual location, this inquiry is unavailable to the Court.

*Times* once within fourteen (14) days after entry of the order, and (2) serve Doe via email. (*Id.*) The order further advised Doe of the nature of the matter, how to respond to the lawsuit, the time in which to respond, and the potential consequences of not responding to the lawsuit. (*See id.*)

      2.    *Plaintiff's Compliance*

Plaintiff complied with the Court's order.[6] First, Plaintiff filed a "Notice of Filing: Proof of Publication" on October 31, 2019 (Dkt. 6). The notice demonstrated that Plaintiff published the Court's order in *The Washington Times* on October 3, 2019. (*See* Dkt. 6-1.) Second, on September 27, 2019, counsel for Plaintiff sent a copy of the complaint, notice of the lawsuit, a request to waive formal service, the Plaintiff's motion for service by publication and email, and other related documents to the email addresses associated with Defendant Domain Names. (*See* Dkt. 8-3.) Plaintiff has demonstrated that it complied with the Court's order, and the undersigned finds that Plaintiff effected proper service of process pursuant to Federal Rule of Civil Procedure 4(f).[7]

---

[6] Upon filing this lawsuit, Plaintiff also provided notice of the instant matter to GoDaddy, who subsequently locked Defendant Domain Names. (*See* Dkt. 8 at 1.) Plaintiff then issued a subpoena to GoDaddy seeking information regarding Defendant Domain Names. (*Id.*) GoDaddy provided notice of the subpoena to an individual identifying as "Chris Chen." (*Id.*; Dkt. 8-1.) An individual using the name "Rakesh Mish" responded on September 20, 2019 from the email address rakesh2325mish@gmail.com. (Dkt. 8 at 1; Dkt. 8-1 (email from "Rakesh Mish" stating, "Why are our domain being blocked? I purchased this.").)

[7] While not necessary for demonstrating proper service of process, Plaintiff notably received a response from an individual using one of the associated email addresses, prakash596jain@gmail.com, on October 16, 2019. (*See* Dkt. 8 at 2; Dkt. 8-4 (email from "Prakash Jain" stating: "Not going to sign it makes no sense. I purchased domain. You lawsuit me for purchasing domain?").)

II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts.

Plaintiff is a resident and citizen of China, and in the business of buying internet domain names and reselling them for profit. (Compl. ¶ II(3), IV(27).) Plaintiff acquired Defendant Domain Names as part of his business. (Compl. ¶ II(18).) The relevant information for each domain name is as follows:[8]

- Plaintiff acquired 191.com on March 15, 2017 and has maintained registration of it through September 23, 2021. (Compl. ¶ II(10).) The primary email address for this domain name prior to the alleged theft was alexandeintransitive@foxmail.com. (*Id.*)

- Plaintiff acquired 223.com on March 31, 2017 and has maintained registration of it through May 15, 2022. (Compl. ¶ II(11).) The primary email address for this domain name prior to alleged theft was capslock08080808@gmail.com. (*Id.*)

- Plaintiff acquired 8028.com on April 6, 2017 and has maintained registration of it through May 1, 2021. (Compl. ¶ II(12).) The primary email address for this domain name prior to the alleged theft was alexandeintransitive@foxmail.com. (*Id.*)

- Plaintiff acquired 030.com on April 13, 2017 and has maintained registration of it through May 3, 2021. (Compl. ¶ II(13).) The primary email address on this domain name prior to the alleged theft was capslock080808@gmail.com. (*Id.*)

- Plaintiff acquired 282.com on January 16, 2018 and has maintained registration of it through September 17, 2021. (Compl. ¶ II(14).) The primary email address on this domain name prior to the alleged theft was 8yingying9989@gmail.com. (*Id.*)

- Plaintiff acquired 8256.com on April 20, 2017 and has maintained registration of it through May 23, 2021. (Compl. ¶ II(15).) The primary email address on this domain name prior to the alleged theft was alexandeintransitive@foxmail.com. (*Id.*)

---

[8] As noted throughout, Plaintiff controlled Defendant Domain Names through three email accounts: (1) capslock080808@gmail.com, (2) alexandeintransitive@foxmail.com, and (3) 8yingying9989@gmail.com. (Compl. ¶ IV(29).)

- Plaintiff acquired 4589.com on April 20, 2017 and has maintained registration of it through February 7, 2025. (Compl. ¶ II(16).) The primary email address on this domain name prior to the alleged theft was alexandeintransitive@foxmail.com. (*Id.*)

- Plaintiff acquired 6910.com on April 20, 2017 and has maintained registration of it through March 23, 2021. (Compl. ¶ II(17). The primary email address on this domain name prior to the alleged theft was alexandeintransitive@foxmail.com. (*Id.*)

Plaintiff renewed the registration for each Defendant Domain Name on March 5, 2019 and maintained the relevant email accounts on a username- and password-protected computer. (Compl. ¶¶ II(8), IV(30).) None of Defendant Domain Names have been resolved into a webpage. (Compl. ¶ II(19).)

Defendant Domain Names are "extremely valuable." (Compl. ¶ IV(28).) Plaintiff alleges that they are worth approximately $3,500,000.00. (Compl. ¶ IV(28.) On or about June 13, 2019, Plaintiff alleges that Doe hacked his computer and email accounts and used this unauthorized access to transfer Defendant Domain Names to his control by changing their registration records without Plaintiff's authorization. (Compl. ¶¶ II(20), IV(31)-(33), (37).) Doe then allegedly provided misleading and/or incomplete contact information in the respective domain-name registration records. (Compl. ¶ IV(38).) Additionally, Plaintiff alleges that Doe took control of Defendant Domain Names with the intent to wrongfully resell them for profit. (Compl. ¶¶ IV(35)-(36).) As a result of Doe's conduct, Plaintiff has lost the ability to sell Defendant Domain Names for profit. (Compl. ¶ IV(28).)

### III. EVALUATION OF THE PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

As noted above, Plaintiff brought claims for (1) declaratory judgment, (2) tortious interference with contractual relationship, (3) conversion, and (4) violations of the CFAA. As discussed more below, Plaintiff requests that the Court grant injunctive relief by transferring control of Defendant Domain Names back to him. For purposes of fashioning appropriate relief, it is therefore only necessary for the Court to analyze Plaintiff's claim under the CFAA.

### A.    Legal Standard

The CFAA prohibits computer fraud effectuated on protected computers. *See* 18 U.S.C. § 1030, *et seq.* Under the CFAA, a "protected computer" is a computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce." *Id.* § 1030(e)(2)(B).

The statute prohibits, among other things:

- intentionally accessing a protected computer without authorization and thereby obtaining information (18 U.S.C. § 1030(a)(2)(C));
- accessing any protected computer without authorization, "knowingly and with intent to defraud," and obtaining anything of value from the fraudulent conduct (unless the thing obtained "consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period") (18 U.S.C. § 1030(a)(4)); and
- intentionally accessing a protected computer without authorization and thereby causing "damage and loss" (18 U.S.C. § 1030(a)(5)(C)).

**B.     Analysis**

Here, Plaintiff has sufficiently alleged a claim under the CFAA. Plaintiff first alleges that his computer was a "protected computer" involved in a transaction "involving an interstate or foreign communication." (Compl. ¶ V(53).) Plaintiff also alleges that Doe violated the three CFAA provisions outlined above.

First, Doe allegedly "knowingly and intentionally" accessed Plaintiff's computer and email accounts, and thereby "obtained information" from Plaintiff's computer. (Compl. ¶ V(53).) As discussed above, the undersigned found that Doe hacked Plaintiff's computer and email accounts to change the registration information for Defendant Domain Names so that he could control them. To do so, Doe must have "obtained information" from Plaintiff's computer.

Second, Plaintiff alleges that Doe "knowingly, and with intent to defraud, accessed the Plaintiff's email system on a protected computer without authorization and obtained information from that computer which Defendant Doe used to further a fraud and obtain something of value." (Compl. ¶ V(54).) Plaintiff further alleges that Doe's conduct cost him "at least $5,000." (Compl. ¶ V(56). Again, as discussed above, the undersigned found that Defendant Domain Names are worth approximately $3,500,000.00. Doe therefore knowingly obtained "something of value" by fraudulently transferring control of Defendant Domain Names and hacking Plaintiff's computer.

Lastly, Plaintiff alleges that Doe "intentionally accessed the Plaintiff's email system on a protected computer without authorization and as a result of such conduct caused damage and loss." (Compl. ¶ V(55).) Here, Doe's conduct undoubtedly caused financial damage and loss to Plaintiff. Plaintiff's business entails buying internet domain names and reselling them for a profit. Therefore, Doe stole the means of Plaintiff's business and inflicted financial loss.

The Court therefore finds that Plaintiff has sufficiently alleged a claim under the CFAA upon which relief can be granted.

IV. REQUESTED RELIEF

Plaintiff requested injunctive and other equitable relief in his Amended Complaint. (Compl. ¶ I(2).) At this juncture, Plaintiff requests that the Court enter default judgment against Doe and Defendant Domain Names, and transfer control of Defendant Domain Names back to Plaintiff. (Mem. Supp. at 2.)

A.  **Permanent Injunctive Relief**

To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

(1)  that it has suffered an irreparable injury;
(2)  that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3)  that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4)  that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Here, Plaintiff meets these requirements.

First, Plaintiff has demonstrated that he suffered an irreparable injury, and will continue to suffer the injury absent injunctive relief. Plaintiff's business consists of purchasing and reselling internet domain names. Because Doe wrongfully transferred control of Defendant Domain Names by changing the registration records, Plaintiff lost property that he purchased and rightfully belonged to him. Plaintiff therefore suffered an irreparable injury by losing that property. Second, the undersigned finds that legal remedies are insufficient here. Because Doe's location and exact identity are unknown, and he has failed to appear or respond to this lawsuit, it would likely be impossible for Plaintiff to recoup his financial losses from Doe. Accordingly,

because the Court can order relevant entities to transfer control of Defendant Domain Names back to Plaintiff, the undersigned finds that injunctive relief is appropriate here. Third, the balance of the hardships weighs strongly in favor of Plaintiff. Doe would not suffer a cognizable hardship here because he took property that did not belong to him in the first place. Finally, the undersigned finds that the public interest supports granting injunctive relief because it will protect Plaintiff's rightful ownership of property and potentially deter future computer hacking and illegal domain-name transfers.

### B. Dismissing Remaining Counts Without Prejudice

As discussed above, the undersigned finds that Plaintiff has sufficiently alleged that he is the rightful owner of Defendant Domain Names, and that Plaintiff plead a claim upon which relief can be granted under the CFAA. Therefore, because the Court can grant Plaintiff's requested relief pursuant to the CFAA, the undersigned finds it appropriate to dismiss the remaining counts—Counts I (declaratory judgment), Count II (tortious interference with contractual relationship), and III (conversion)—without prejudice against Doe and Defendant Domain Names.

### V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court enter default judgment against Doe and Defendant Domain Names. Specifically, the undersigned further recommends that the Court enter an order (1) requiring Verisign, Inc. to take the necessary steps to change the registrar of record for Defendant Domain Names (191.com, 223.com, 282.com, 030.com, 8256.com, 8028.com, 6910.com, and 4589.com) to Plaintiff as directed by Plaintiff's counsel; and (2) dismiss Counts I, II, and III of Plaintiff's verified complaint without prejudice against Doe and Defendant Domain Names.

VI. N<span>OTICE</span>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

                                                                                           /s/
                                          THERESA CARROLL BUCHANAN
                                          UNITED STATES MAGISTRATE JUDGE

March 27, 2020
Alexandria, Virginia